CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
JUL 27 2007
for c'ville
JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
## CHARLOTTESVILLE DIVISION

| | |
|---|---|
| MARGARET ELLEN CORBIN<br>*as Administrator and Personal Representitive of the Estate of Brian Donald Corbin*,<br><br>*Plaintiff*<br><br>v.<br><br>STEVE ALLEN SMITH *et al.*,<br><br>*Defendant.* | CASE NO. 3:06-CR-00047<br><br>OPINION AND ORDER<br><br>JUDGE NORMAN K. MOON |

This matter is before the Court on the Defendant's May 25, 2007 Motion For Summary Judgment. A hearing was held on June 25, 2007. For the reasons given below, this motion is GRANTED.

## I. BACKGROUND

The facts, taken in the light most favorable to the Plaintiff, are as follows:

This case concerns a traffic accident in which a large tractor-trailer struck a pedestrian, killing him. A computer reconstruction of the scene, included as an exhibit, shows two travel lanes and the end of an acceleration lane which tapers out of existence in the vicinity of the collision. This lane allows drivers coming from Route 20 northbound to merge onto I-64 westbound. Debris from the accident was found in various places marked on the reconstruction, including pavement and grass to the right of the roadway.

On December 3, 2003, Defendant Smith was driving a tractor-trailer rig westbound on I-64. Just before 2:00 AM, he passed over the bridge spanning Route 20 and entered the area described above. He looked into his left side mirror because another truck was passing him. (Smith 33). He saw, from the corner of his eye, a "black shadow," and struck the shadow moments later, destroying his right-side headlights. (Smith, 33-34). He believed the shadow moved somewhat immediatly before impact, rising from what appeared to be a crouch. (Smith 43). At first, he believed it to be a black bear. (Smith 43). Smith coasted to a stop beyond the entrance ramp from Route 20 southbound (Keaton 17). He apparently called 911 at 1:59, as the State Police were summoned to the scene (Keaton Ex. 9).

Virginia State Trooper David Keaton arrived at the accident scene at about 2:25 AM. (Keaton Ex. 9) The trooper and Smith drove back around to the accident scene and investigated (Keaton 18). They discovered boots, separated by a considerable distance at the end of an acceleration lane leading from Route 20 northbound to I-64 westbound. They then discovered the body of Plaintiff's decedent, Brian Corbin, in the grass to the right of the roadway. There is disagreement about who spotted the body first. (Keaton 21, Smith 55-56).

At some point a tow truck apparently removed Smith's damaged rig from the scene. It left behind numerous pieces of debris at the scene, documented in the exhibits to the Keaton and Rorer depositions, but no photographs of damage to the truck itself are in evidence. The only photograph of the truck, taken at an unknown indoor location, appears to show an dark substance on the left front drive wheels. (Rorer Ex. 12)

Trooper Keaton took photographs of the scene while it was still dark, some of which were included as exhibits to his deposition. He also obtained a written statement from Smith, included as Keaton Exhibit 9. After leaving the scene and conducting other business, he returned after

daybreak to mark the locations of debris and other marks on the pavement with orange paint, including some fluids which were never analyzed. (Keaton 37-38, 65-66). Photographs of the results were also included as exhibits. At no time did the trooper close the highway to traffic because all of the items of interest were in the acceleration lane or off the shoulder (Keaton 63).

An accident investigator, Michael Rorer, was called by Defendant's law firm to inspect the scene. (Rorer 21). He took numerous photographs, some included as exhibits, and a unknown person apparently working for his firm created a diagram showing the scene and markings made by the state police. (Rorer Ex. 2). He apparently took photographs of the truck in the shop to document the damage it had suffered, only a few of which are included as exhibits.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that a court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment under Rule 56 is appropriate only when the court, viewing the record as a whole and drawing reasonable inferences in the light most favorable to the nonmoving party, determines that the Rule 56(c) standard has been met. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994); *Terry's Floor Fashions, Inc. v. Burlington Indus.*, Inc, 763 F.2d 604, 610 (4th Cir. 1985).

If the nonmoving party bears the burden of proof, "the burden on the moving party may be discharged by 'showing' ... an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If the moving party shows such an absence of evidence, the burden

shifts to the nonmoving party to set forth specific facts illustrating genuine issues for trial. *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324.

A court must grant a motion for summary judgment if, after adequate time for discovery, the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. The nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but ... [must] by affidavits or as otherwise provided in ... [Rule 56] set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Indeed, Plaintiff cannot defeat a properly supported motion for summary judgment with mere conjecture and speculation. *Glover v. Oppleman*, 178 F. Supp. 2d 622, 631 (W.D. Va. 2001) ("Mere speculation by the non-movant cannot create a genuine issue of material fact.").

### III. DISCUSSION

Jurisdiction in this case is founded on diversity of citizenship, which means that state substantive law will govern the decision under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938) and its progeny.

Virginia does not presume negligence because of the mere happening of an accident. *Weddle v. Draper*, 204 Va. 319, 321, 130 S.E.2d 462, 464 (Va. 1963). Rather, a plaintiff must come forward with evidence of how an accident occurred and show that it resulted from defendant's negligence. *Id.* Mere injury is not sufficient; there must also be evidence wrongdoing or an presumption of innocence will attach to Defendant. *Railroad Company v. Mullins*, 207 Va. 207, 212 – 213 (1966). Here, The only evidence of what happened is the debris trail and the affidavit of Defendant. There are no other known witnesses; nearby truckers apparently did not see the collision. No experts have offered their professional opinions on how

the accident occurred.

Plaintiff suggests that the debris trail, which was found only to the right of the travel lane, supports an inference that Defendant Smith had drifted out of his proper lane before impact. (Def. Mem. In Opp at 5, docket # 53). Plaintiff also points out that none of the post-accident witnesses observed movement by any of the objects found at the scene, suggesting that they remained where they first fell. *Id* at 4. Defendant denies any negligence, and states that he was driving both in his lane and below the speed limit.

Defendant offers a similar case in which a debris trail and the testimony of the Defendant are ruled to be insufficient to sustain a claim. In *Elliot v. Anderson*, 753, 160 S.E.2d 775 (1968), a pedestrian struck by a car left a trail of peanuts which extended from just off the paved portion of the road to beyond the final resting place of the victim on the far side of a ditch. This was considered inadequate to show how the accident happened. 208 Va. at 757-58, 160 S.E.2d at 779. Plaintiff distinguishes this case on the basis that in *Elliot* "there was no evidence of a clear debris trail running along the right shoulder of the road." But the trail of peanuts seems, from the description given, to have corresponded rather well with the trail of debris in this case: it began to the right of the travel lane, and continues out into an area which is indisputably farther from the road than Anderson's vehicle ever was. *Id.*

While I would not suggest, as did one Virginia court, that a motor vehicle collision would cause objects to "defy the laws of physics,"[1] it is clear that objects attached to or struck by a large truck moving at a mile per minute may not come to rest exactly where they were struck or detached. They may fly through the air, and roll or skid along the ground. They may be pushed aside by eddies created by vehicles which pass after they have landed. The evidence makes clear

---

[1] *Bridgeforth v. Gibbs*, 207 Va. 127, 132-34, 148 S.E.2d 763, 766-67 (1966)

that the decedent, a grown man, was somehow moved a considerable distance from the pavement to the grass; debris could easily have traveled a smaller distance away from the actual point of impact. Exactly how the peanuts in *Elliot*, or in the instant case, the various items found by investigators, came to land where they did is unknown. But that lack of knowledge can only harm Plaintiff, who has the burden of proving negligence. A reasonable fact finder could only reach a conclusion by relying on speculation and guesswork.

Plaintiff also claims that marks on the pavement, which allegedly correspond to an unknown substance on the driver-side front tandem wheels of the truck, show that Plaintiff was well to the right of the fog line at some point, and thus prove negligence. At the hearing, Plaintiff presented photographs, enlarged to the same scale, showing a correspondence between the tires and the marks. But even this evidence is at best highly speculative. The tires were photographed inside a garage at an unknown location. (Rorer Ex. 12). The truck thus had been towed an unknown distance, sat outside for an unknown time, and been rolled in to the garage. There is no evidence of how the towing occurred, or if the wheels were elevated or rolled along the ground for that trip, or what might have been on the ground in the garage or its parking lot. There is no evidence of similar fluid on the other tandem wheels, nor is there evidence of a source for the fluid or of a trail of marks on I-64 which might be expected from a wheel which had been contaminated in one spot while continuing to roll along the road. There is no way to know the source of the substance, nor has there been, for instance, chemical analysis to confirm that the wheels actually made the marks, or that the marks are in any way at all connected to this case. The only connection between the wheels and the marks is, once again, speculation and guesswork.

## IV. CONCLUSION

This case suffers from a severe lack of evidence. Plaintiff has advanced a plausible theory, which Defendant cannot disprove, involving inattention and lack of control. Unfortunately, although the evidence is consistent with this theory, it does not compel it, or indeed even offer any grounds to prefer it over other possible theories. The evidence is also consistent with Defendant's theory that Smith was helpless to prevent a collision despite responsible and safe driving. A jury would unable to do more than guess at the truth. For these reasons, the Motion for Summary Judgment is GRANTED. This case is DISMISSED and shall be STRICKEN from the docket of the Court.

The Clerk of the Court is directed to send a certified copy of this Order to all counsel of record.

ENTERED: *[signature]*
U.S. District Judge

Date: July 27, 2007